

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| KEYLESS LICENSING LLC, | § § § | |
| v. | § § | CASE NO. 2:24-CV-00464-JRG |
| SAMSUNG ELECTRONICS CO., LTD, and SAMSUNG ELECTRONICS AMERICA, INC., | § § § § § | |

## CLAIM CONSTRUCTION
## MEMORANDUM AND ORDER

On December 15, 2025, the Court held a hearing to determine the proper construction of disputed terms in United States Patents No. 9,304,602, 10,976,922, and 11,503,144.

Before the Court is the Opening Claim Construction Brief (Dkt. No. 70) filed by Plaintiff Keyless Licensing LLC ("Plaintiff" or "Keyless"). Also before the Court are the Responsive Claim Construction Brief (Dkt. No. 72) filed by Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. ("Defendants" or "Samsung"), and Plaintiff's reply (Dkt. No. 77). Further before the Court are the parties' November 26, 2025 Amended Joint Claim Construction and Prehearing Statement (Dkt. No. 96) and the parties' December 3, 2025 Amended Joint Claim Construction Chart (Dkt. No. 100).

Having reviewed the arguments made by the parties at the hearing and in their claim construction briefing, having considered the intrinsic evidence, and having made subsidiary factual findings about the extrinsic evidence, the Court hereby issues this Claim Construction Memorandum and Order. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc); *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015).

<u>Table of Contents</u>

I. BACKGROUND.................................................................................................... 3

II. LEGAL PRINCIPLES ........................................................................................ 4

III. AGREED TERMS.............................................................................................. 7

IV. DISPUTED TERMS IN U.S. PATENT NO. 11,503,144 ................................. 7

   1. "wherein the width of the front surface is substantially shorter than the length" and "wherein the width of the front surface of the mobile phone is significantly shorter than the length".................................................................................................. 8

   2. "wherein [the/said] housing has a thin thickness" ............................................. 14

   3. "none of said components is noticeably extended out from said housing," "wherein said components of the mobile phone are integrated within the body such that none of said components is significantly extended out from the body," and "none of said components is noticeably extended out from said the body"................................................. 18

   4. "wherein upon providing a sweeping action on said display unit," "wherein upon identifying an input corresponding to a sweeping action provided on a touch sensitive surface of said device," and "wherein upon providing a predefine[d] interaction with an icon"........................................................................................................................ 23

   5. "said display unit practically covers the entire front surface of said housing," "said display unit practically occupying the entire front surface of the mobile phone," and "said display unit occupying practically the entire surface of the front surface of said device" . 27

V. DISPUTED TERMS IN U.S. PATENT NO. 9,304,602 .................................... 34

   6. "wherein a gliding action provided from outside of the touch screen towards inside of the touch screen, said gliding action at first interacting with said at least one window on the touch screen, is processed by said processor" and "wherein said gliding action is provided from outside the touchscreen towards inside the touch screen, wherein said gliding action at first interacts with said zone on said touch screen" ................................. 35

   7. "a gliding action provided from said zone of the touch screen towards any arbitrary direction inside the touch screen at first interacts with said zone" ..................................... 39

   8. "substantial portion of an edge of the touch screen" / "substantial portion of said edge".... 42

   9. "substantially equal to a length of the gliding action"........................................ 45

   10. "said at least one window comprises more than one window located on one or more edges of the touch screen" and "said bar comprises more than one bar located on one or more edges of the touch screen" ................................................................................ 48

VI. DISPUTED TERMS IN U.S. PATENT NO. 10,976,922 ................................... 52

   11. "wherein upon interacting with the interface of any of said applications, the focus of the system is given to the interacted application" ................................................................ 52

   12. "a search application activated by interacting with a button of said keyboard"................. 55

   13. "use at least one keyword typed through said keyboard" .................................... 57

VII. CONCLUSION .................................................................................................. 58

# I. BACKGROUND

Keyless alleges infringement of United States Patents No. 9,304,602 (the "'602 Patent"), 10,976,922 (the "'922 Patent"), and 11,813,144 (the "'144 Patent").  Dkt. No. 70, Exs. A-C.

The '602 Patent, titled "System for Capturing Event Provided From Edge of Touch Screen," issued on April 5, 2016, and bears an earliest priority date of December 20, 2009.  Plaintiff submits that "[t]he '602 Patent solves the problem of reliably recognizing gestures originating off the touchscreen,' and "[i]t teaches detecting a 'gliding action' that begins outside the screen, first interacts with a defined on-screen window or zone, and is then processed to trigger context-sensitive functions . . . ."  (Dkt. No. 70, at 2.)  The Abstract of the '602 Patent states:

> A data entry system, having an input interface adapted to identify a plurality of user interactions. The system includes a processor adapted to associate user interactions identified by the input interface with a plurality of letters of the alphabet, such that all the letters of the alphabet are assigned to at most eight user interactions. Most of the letters are assigned to specific user interactions according to one or more features of their shape in their printed form, such that most of the letters assigned to each user interaction have the same shape feature.

The '922 Patent, titled "Data Entry Systems," issued on April 13, 2021, and bears an earliest priority date of February 17, 2013.  Plaintiff submits that "[t]he '922 Patent addresses seamless multitasking on a single touchscreen by partitioning screen real estate among multiple applications."  (Dkt. No. 70, at 2.)  The Abstract of the '922 Patent states:

> A system is described with a plurality of keys, five of the keys representing all of the letters of an alphabet. The five keys are arranged to form two to three rows of keys. A first row includes two of the five keys and a second row includes at least two other keys of the five keys. The keys are hard keys and/or virtual keys.

The '144 Patent, titled "Systems to Enhance Data Entry in Mobile and Fixed Environment," issued on November 15, 2022, and bears an earliest priority date of April 18, 2003.  Plaintiff submits that "[t]he '144 patent addresses improved mobile-device form factors and user interfaces to improve portability, comfortable use, and ease of interaction."  (Dkt. No. 70, at 1.)

The Abstract of the '144 Patent states:

A mobile phone device includes a housing having a substantially rectangular shape wherein its height dimension substantially corresponds to a distance between an ear and a mouth of a user and wherein its width dimension is less than its height dimension. A display unit is integrated within the front surface of the mobile phone device. The display unit substantially entirely covers the front surface of the mobile phone device. The mobile phone device does not include a physical key on the front surface.

## II. LEGAL PRINCIPLES

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips*, 415 F.3d at 1312 (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). Claim construction is clearly an issue of law for the court to decide. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). "In some cases, however, the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Teva*, 135 S. Ct. at 841 (citation omitted). "In cases where those subsidiary facts are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence. These are the 'evidentiary underpinnings' of claim construction that we discussed in *Markman*, and this subsidiary factfinding must be reviewed for clear error on appeal." *Id.* (citing 517 U.S. 370).

To determine the meaning of the claims, courts start by considering the intrinsic evidence. *See Phillips*, 415 F.3d at 1313; *see also C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). The intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard*, 388 F.3d at 861. Courts

give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent. *Phillips*, 415 F.3d at 1312–13; *accord Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314. First, a term's context in the asserted claim can be very instructive. *Id.* Other asserted or unasserted claims can aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent. *Id.* Differences among the claim terms can also assist in understanding a term's meaning. *Id.* For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id.* at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* at 1315 (quoting *Markman*, 52 F.3d at 979). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips*, 415 F.3d at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *accord Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id.* The specification may also resolve the meaning of ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex*, 299 F.3d at 1325. But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into

the claims." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *accord Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc. v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent."). "[T]he prosecution history (or file wrapper) limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance." *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985).

Although extrinsic evidence can be useful, it is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Phillips*, 415 F.3d at 1317 (citations and internal quotation marks omitted). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id.* at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are entirely unhelpful to a court. *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

The Supreme Court of the United States has "read [35 U.S.C.] § 112, ¶ 2 to require that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled

in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014). "A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) (citations and internal quotation marks omitted), *abrogated on other grounds by Nautilus,* 134 S. Ct. 2120. "Indefiniteness must be proven by clear and convincing evidence." *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017).

## III. AGREED TERMS

In their November 26, 2025 Amended Joint Claim Construction and Prehearing Statement, the parties submit that they "have not come to an agreement on the construction of any of the terms . . . in dispute." (Dkt. No. 96, at 1.)

## IV. DISPUTED TERMS IN U.S. PATENT NO. 11,503,144

As a threshold matter, Plaintiff argues that "[t]he fact that the examiner, the parties, and their experts applied these terms during prosecution and in the IPR further supports a conclusion that the claims are not indefinite" (Dkt. No. 70, at 17), but an *Inter Partes* Review ("IPR") petition cannot assert indefiniteness. *See* 35 U.S.C. § 311(b); *see also Cuozzo Speed Tech., LLC v. Lee*, 136 S. Ct. 2131, 2141–42 (2016); *Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*, 948 F.3d 1342, 1355 (Fed. Cir. 2020). Also, the Federal Circuit has found that "indefiniteness of a claim does not always imply inability to conduct a prior-art analysis needed for an inter partes review." *See Cochlear Bone Anchored Sols. AB v. Oticon Medical AB*, 958 F.3d 1348, 1359–60 (Fed. Cir. 2020) (citation omitted). The IPR proceedings cited by Plaintiff therefore do not significantly affect the Court's analysis.

**1. "wherein the width of the front surface is substantially shorter than the length" and "wherein the width of the front surface of the mobile phone is significantly shorter than the length"**

| "wherein the width of the front surface is substantially shorter than the length" (’144 Patent, Claim 1) | |
|---|---|
| "wherein the width of the front surface of the mobile phone is significantly shorter than the length" (’144 Patent, Claim 9) | |
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning. Not indefinite. | Indefinite |

(Dkt. No. 96, Ex. A, at 34; Dkt. No. 100, Ex. A, at 6.)

(a) The Parties' Positions

Plaintiff argues that "substantially" is a permissible word of approximation and that the intrinsic record and the "technological context" provide reasonable clarity. (Dkt. No. 70, at 4–5.) For example, Plaintiff refers to "the well-known rectangular form factor" for mobile devices, which can facilitate a user operating the device with one hand as well as "fit[ting] in a user's pocket and easily slid[ing] in and out of the user's pocket." (*Id.* at 6–8.)

Defendants respond that "[t]hese limitations are terms of degree that lack an objective boundary in the intrinsic or extrinsic evidence for determining what constitutes 'substantially shorter' or 'significantly shorter,' rendering these limitations indefinite." (Dkt. No. 72, at 4 (citation omitted).) Defendants argue, for example, that "[t]he '144 patent also lacks explanation of how 'substantially shorter' differs from 'significantly shorter.'" (*Id.* (citation omitted); *see id.*, at 4–5.) Further, Defendants argue that "[t]he other potential metrics that Keyless identifies are not objective boundaries because they depend on the particular user or the clothes that the user is wearing." (*Id.*, at 7.) Finally, Defendants submit that "Keyless and its expert cannot rely on the

figures to provide guidance on the objective boundaries on the relative dimensions of the body when the '144 patent states that the drawings are not to scale."  (*Id.*, at 8.)

Plaintiff replies that quantitative boundaries are not required and that "[a] POSITA of mobile phones would know with reasonable certainty the approximate length between the ear and the mouth of a user."  (Dkt. No. 77, at 1 (citation omitted).)  Plaintiff also argues that "[a] POSITA would understand the claimed 'mobile phone' is a handheld device limiting width with respect to a human hand as shown in the '144 patent's figures," and "[c]orrelating width to the size of a human hand is sufficient to render this term definite under Federal Circuit precedent."  (*Id.* (citations omitted).)

At the December 15, 2025 hearing, the parties presented oral arguments.  Defendants argued for example that the claims here at issue are not tied to one-handed use.  Defendants also noted that hand sizes and pocket sizes vary and that the specification, though lengthy, does not describe dimensions or form factor.  Plaintiff responded that person-to-person variation in hand size, for example, does not undermine definiteness because the dimensions at issue are objectively measurable, not subjective.

(b)  Analysis

Claim 1 of the '144 Patent, for example, recites (emphasis added):

1. A mobile phone device, comprising:
    a practically rectangular-shaped housing within which the components of a mobile phone are integrated, said housing having a front surface, a back surface and four side surfaces, wherein the length of the front surface approximately corresponds to the distance between the ear and the mouth of a user and *wherein the width of the front surface is substantially shorter than the length* and wherein the housing has a thin thickness; and
    a display unit integrated within the front surface of said housing wherein said display unit practically covers the entire front surface of said housing;
    wherein said mobile phone device does not include a physical key on the front surface, and

- 9 -

wherein said components of the mobile phone are integrated within said housing such that none of said components is noticeably extended out from said housing.

Claim 7, which depends from Claim 1, provides an example by reciting:

7. The device of claim 1, wherein the width of the device is approximately half of said length.

On one hand, "a term of degree fails to provide sufficient notice of its scope if it depends 'on the unpredictable vagaries of any one person's opinion.'" *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014) (quoting *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350 (Fed. Cir. 2005)).

On the other hand, the Court of Appeals for the Federal Circuit has "rejected the proposition that claims involving terms of degree are inherently indefinite." *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017). "[W]ords of approximation, such as 'generally' and 'substantially,' are descriptive terms commonly used in patent claims to avoid a strict numerical boundary to the specified parameter." *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1310–11 (Fed. Cir. 2003); *see Verve LLC v. Crane Cams, Inc.*, 311 F.3d 1116, 1120 (Fed. Cir. 2002) ("Expressions such as 'substantially' are used in patent documents when warranted by the nature of the invention, in order to accommodate the minor variations that may be appropriate to secure the invention."); *see also Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1359 (Fed. Cir. 2012) ("This court has repeatedly confirmed that relative terms such as 'substantially' do not render patent claims so unclear as to prevent a person of skill in the art from ascertaining the scope of the claim."); *see, e.g., Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1347 (Fed. Cir. 2018) ("substantially straight").

Also, the Figures of the '144 Patent provide context that assists in understanding the disputed terms. The claims here at issue are directed to "mobile phone" devices, and dozens of

- 10 -

Figures of the '144 Patent illustrate mobile phones and similar devices. *See* '144 Patent at Figs. 3, 6, 7, 13, 14, 15, 16, 17, 18a, 18b, 18c, 18d, 18e, 18f, 18g, 18h, 19, 20, 21a, 21b, 22a, 22b, 24b, 25b, 26, 27, 27b, 31, 60, 64b, 65a, 65b, 66, 68 & 71c. Admittedly, the specification notes that "the drawings are not necessarily drawn to scale" and "are merely conceptual in nature" (*id.* at 24:64–66), and the Federal Circuit has stated that "it is well established that patent drawings do not define the precise proportions of the elements and may not be relied on to show particular sizes if the specification is completely silent on the issue." *Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*, 222 F.3d 951, 956 (Fed. Cir. 2000). Yet, this principle merely cautions against relying on the "precise" proportions illustrated. Defendants cite no authority precluding relying on Figures for context, and *Phillips* explains that patent claims are read "in the context of the entire patent." 415 F.3d at 1313.

As is evident from these above-cited Figures, and as Plaintiff's expert persuasively opines, a person of ordinary skill in the art would recognize that having width substantially shorter than length facilitates a user interacting with the device, especially one-handed interaction. (Dkt. No. 75-2, Aug. 1, 2025 Malek Decl. ¶ 40; *see also* '144 Patent at 17:38–47 ("[s]aid user may use only one hand to hold said device 1300 in his hand and in the same time manipulate its keypad 1303"); *id.* at 18:55–63 (similar) & 21:45–50 (similar).) Even though these claims do not recite one-handed interaction as a limitation, these claims do recite a "mobile phone," and in that context these disclosures are informative.

Moreover, the form factors associated with the phrase "mobile phone" have been well known not only to persons of ordinary skill in the art but also to lay persons. *See Phillips*, 415 F.3d at 1314 ("In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases

involves little more than the application of the widely accepted meaning of commonly understood words.").  Defendants cite *Interval Licensing*, 766 F.3d at 1371, as support for rejecting Plaintiff's reliance on reference points that vary from user to user, such as a human hand, but Defendants cite no authority that warrants finding indefiniteness based on well-known variations between physical attributes of human users.

Also, Claim 9 (as well as Claim 5, which depends from Claim 1) recites "when the device is used . . . in landscape position and in portrait position," which provides additional context for understanding the degree to which the width must be shorter than the length.  Although Defendants note that landscape and portrait orientations of the display do not necessarily reflect the dimensions of the overall device because "[t]he size of the body need not be completely commensurate with the size of the display unit," these references to landscape and portrait orientations nonetheless reinforce the context provided by the above-cited Figures and by the understanding of persons of skill in the art and of lay persons familiar with mobile phones.

Defendants emphasize that whereas above-reproduced Claim 1 uses the word "substantially," Claim 9 uses the word "significantly" (emphasis added):

> 9. A mobile phone, comprising:
> a body having a practically rectangular shape, said body having a front surface, a back surface and four side surfaces, wherein the length of the front surface of the mobile phone corresponds to the distance between the ear and the mouth of a user and wherein the width of the front surface of the mobile phone is *significantly* shorter than the length, and wherein said body has a thin thickness;
> a touch sensitive display unit;
> a virtual keyboard to enter text; and
> a microphone and a speaker;
> wherein said display unit, practically occupying the entire front surface of the mobile phone, is integrated within said mobile phone and wherein said front surface of the mobile phone does not have a physical button and wherein said mobile phone does not have a physical keyboard to enter text, and
> wherein said display unit is adapted to display text, entered through the virtual keyboard, in landscape direction and in portrait direction when the mobile phone is used, respectively, in landscape position and in portrait position.

- 12 -

"In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings." *CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000).

Nonetheless, indefiniteness is analyzed on a claim-by-claim basis, and "[t]he art of claiming sometimes involves drafting claims in a variety of ways to encompass the disclosed subject matter." *Vascular Sols. LLC v. Medtronic, Inc.*, 117 F.4th 1361, 1370 (Fed. Cir. 2024) (citation omitted). The usage of different words in different claims therefore does not necessarily demonstrate any lack of reasonable certainty. *See id.*

Defendants cite the Court's indefiniteness finding as to the term "substantially blur free" in *Clear Imaging Research, LLC v. Samsung Elecs. Co., Ltd., et al.*, No. 2:19-CV-00326, 2020 WL 6384731, at *20 (E.D. Tex. Oct. 30, 2020) (Payne, J.). The Court noted that "both 'blur free' and 'substantially blur free' are used in the patents and the distinction between these two terms is not clear." *See id.*, at *20–*21. The Court noted an apparent distinction in the patent "that 'substantially blur free' is not the same as 'clear and sharp' but rather that 'blur free' is 'clear and sharp.'" *Id.*, at *20. Defendants also cite the indefiniteness finding in *In re Taasera Licensing LLC Patent Litig.*, No. 2:22-MD-3042, 2023 WL 8628323, at *20–*21 (E.D. Tex. Dec. 13, 2023) (Gilstrap, J.) ("substantially real time" found indefinite, noting usage of "both 'real time' and 'substantially real time'" without adequate explanation of "where one ends and the other begins").

Those distinctions in *Clear Imaging Research* and *Taasera*, however, were different than the issue in the present case regarding the relationship between width and length, and, as discussed above, the specification informs the meaning of the disputed terms. Although the words "substantially" and "significantly" are not mathematically precise, the definiteness standard of *Nautilus* does not require mathematical precision. *See Niazi Licensing Corp. v. St. Jude Med. S.C.*,

30 F.4th 1339, 1347 (Fed. Cir. 2022) ("While there must be objective boundaries, we have explained that a patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement. . . . Indeed, patentees often use descriptive words . . . to avoid a strict numerical boundary to the specified parameter.") (citations and internal quotation marks omitted); *see also Sonix*, 844 F.3d at 1378–79. "[A] sound claim construction need not always purge every shred of ambiguity," and "[t]he resolution of some line-drawing problems . . . is properly left to the trier of fact." *See Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 806 (Fed. Cir. 2007) (citing *PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1355 (Fed. Cir. 1998); *Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*, 815 F.3d 1314, 1318–19 (Fed. Cir. 2016) (citing *PPG*, 156 F.3d at 1355; citing *Acumed*, 483 F.3d at 806).

The Court therefore hereby expressly rejects Defendants' indefiniteness argument. Defendants present no alternative proposed construction, and no further construction is necessary.

The Court accordingly hereby construes "wherein the width of the front surface is substantially shorter than the length" and "wherein the width of the front surface of the mobile phone is significantly shorter than the length" to have its **plain meaning**.

**2. "wherein [the/said] housing has a thin thickness"**

| "wherein the housing has a thin thickness" "wherein said body has a thin thickness" ('144 Patent, Claims 1, 9) | |
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning. Not Indefinite. | Indefinite |

(Dkt. No. 96, Ex. A, at 38; Dkt. No. 100, Ex. A, at 7.)

(a)  The Parties' Positions

Plaintiff argues that this term is reasonably clear because "the '144 patent's specification has metrics and figures that illustrate mobile phones with a 'thin thickness.'"  (Dkt. No. 70, at 9.) "For example," Plaintiff argues, "the patent discloses the importance of the mobile phone being thin enough such that a user can hold a mobile phone in one hand while allowing a user to use a thumb to push buttons on the front of the phone, including the far side . . . ."  (*Id.* (citations omitted).)  As additional examples, Plaintiff submits that the specification discloses a device that is "about as thin as a user's thumb, which the specification illustrates in connection with a PDA," and "[a]nother metric in the specification is that the mobile phone has 'a thin thickness' if it fits in a user's pocket."  (*Id.* at 10 (citations omitted).)  Further, Plaintiff notes that "[t]he figures provide side views that use well-known, standardized connections such as USB ports and microphone jacks."  (*Id.* at 13.)

Defendants respond that "[t]he term 'thin thickness' is a term of degree that lacks an objective boundary in the intrinsic and extrinsic evidence for determining what constitutes a 'thin thickness,' rendering these limitations indefinite."  (Dkt. No. 72, at 8 (citation omitted).)  For example, Defendants argue that "under principles of claim differentiation, 'thin thickness' is presumptively broader than claim 8 and, therefore, includes devices with thickness not less than 20 percent of the width . . . [y]et, there is no guidance in the independent claims or the specification on how much thicker than 20% would still be a 'thin thickness.'"  (*Id.*, at 9 (citations omitted))  Also, Defendants argue, "[t]he specification also provides no guidance for the necessary thickness of the device to constitute 'thin.'"  (*Id.*)  Further, Defendants argue that "the size of a hand as a metric is subjective, as hand size depends on the user," and "[p]ockets come in various sizes and

do not provide skilled artisans with an objective boundary for the 'thin thickness' term." (*Id.*, at 9–10).

Plaintiff replies that quantitative boundaries are not required and that "the '144 patent has numerous figures showing 'thin' mobile phones that can be used with one hand, including Figure 22b correlating a thin thickness to thumb size." (*Id.* at 3 (citation omitted).)

At the December 15, 2025 hearing, the parties presented oral arguments.

(b)  Analysis

Claim 1 of the '144 Patent recites (emphasis added):

1. A mobile phone device, comprising:
a practically rectangular-shaped housing within which the components of a mobile phone are integrated, said housing having a front surface, a back surface and four side surfaces, wherein the length of the front surface approximately corresponds to the distance between the ear and the mouth of a user and wherein the width of the front surface is substantially shorter than the length and wherein the housing has a *thin thickness*; and
a display unit integrated within the front surface of said housing wherein said display unit practically covers the entire front surface of said housing;
wherein said mobile phone device does not include a physical key on the front surface, and
wherein said components of the mobile phone are integrated within said housing such that none of said components is noticeably extended out from said housing.

The "thin thickness" terms are not indefinite based on essentially the same analysis set forth above as to the "substantially/significantly shorter" terms discussed above.  *See* '144 Patent at 17:38–47 ("[s]aid user may use only one hand to hold said device 1300 in his hand and in the same time manipulate its keypad 1303") & 21:45–50 (similar); *see also id.* at Figs. 13, 14, 18a & 31.  Defendants note that hand size varies from user to user, and Defendants also note that thickness is not the only factor in whether a user can operate a device with one hand (Dkt. No. 72, at 9–10), but the disclosures and illustrations of one-handed operation are readily understandable reference points for persons of ordinary skill as well as lay persons.

- 16 -

Also, dependent Claim 8 provides a reference point by reciting: "The device of claim 1, wherein the thickness of the device is less than 20 percent of said width."  Defendants argue that "[t]his creates additional uncertainty as to whether 'thin thickness' in claims 1 and 9 is an absolute dimension, a relative dimension compared to the other dimensions of the body, or both," but Defendants do not demonstrate any restriction in this regard in Claim 1.  The *Teva* decision cited by Defendants does not suggest otherwise.  *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1345 (Fed. Cir. 2015) (noting that there are multiple ways of measuring molecular weight, that the specification did not define molecular weight, and that "[t]he claims do not indicate which measure to use").

Moreover, Figures 27 and 27b provide additional context by illustrating a side of a device having thickness in relation to "ports 2706," and the specification discloses that those ports "may be the standard ports such as a microphone jack or USB port."  *Id.* at 26:39–40.  This reference to "standard" ports underscores that a person of ordinary skill in the art would readily view Figures 27 and 27b as illustrating an example of thickness.  Although, as Defendants argue, the disclosure of this example does not set an upper boundary for how much thickness is still "thin," these Figures nonetheless are informative as part of "the context of the entire patent."  *Phillips*, 415 F.3d at 1313.

Thus, whether a device is "thin" in the context of this patent and these claims is a factual question regarding infringement.  *See Acumed*, 483 F.3d at 806 ("[t]he resolution of some line-drawing problems . . . is properly left to the trier of fact") (citing *PPG*, 156 F.3d at 1355).

The Court therefore hereby expressly rejects Defendants' indefiniteness arguments.  Defendants present no alternative proposed construction, and no further construction is necessary.

The Court accordingly hereby construes "wherein the housing has a thin thickness" and "wherein said body has a thin thickness" to have their **plain meaning**.

- 17 -

**3. "none of said components is noticeably extended out from said housing," "wherein said components of the mobile phone are integrated within the body such that none of said components is significantly extended out from the body," and "none of said components is noticeably extended out from said the body"**

| | |
|---|---|
| **"none of said components is noticeably extended out from said housing"** ('144 Patent, Claim 1) **"wherein said components of the mobile phone are integrated within the body such that none of said components is significantly extended out from the body"** ('144 Patent, Claim 14) **"none of said components is noticeably extended out from said the body"** ('144 Patent, Claim 19) | |
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning. Not Indefinite. | Indefinite |

(Dkt. No. 96, Ex. A, at 40–41; Dkt. No. 100, Ex. A, at 9.)

(a)  The Parties' Positions

Plaintiff argues that these terms are reasonably clear and that "[i]f the mobile phone retains its rectangular form factor despite any component extending out, then the component does not extend out 'noticeably' or 'significantly.'" (Dkt. No. 70, at 14 (citation omitted).)  Plaintiff also argues that "the specification and figures disclose components that extend 'significantly' and 'noticeably' out, such as an 'extendable' microphone or 'extendable' display (shown in yellow below), each of which 'significantly' and 'noticeably' extend from the housing to alter the overall form factor of the device so that the mobile phone has a T-shape or irregular shape, instead of a 'practically rectangular shape' as required by the claims." (*Id.*, at 14.)

Defendants respond that "[t]he terms 'noticeably extended' and 'significantly extended' are subjective terms that lack an objective boundary in the intrinsic or extrinsic evidence for determining the metes and bounds of what constitutes 'noticeable' and 'significant.'" (Dkt. No.

72, at 11.)  Defendants argue, for example, that "[n]either the '144 patent nor its file history provides any guidance on how to objectively determine where the boundary is," and "the figures are not a reliable source of determining what is a noticeable or significant extension because they are not drawn to scale."  (*Id.*, at 12 (citation omitted).)

Plaintiff replies that "the components must be integrated into the housing so that no components extend out from the body disrupting the rectangular form factor."  (Dkt. No. 77 at 3.)

At the December 15, 2025 hearing, the parties presented oral arguments.

(b)  Analysis

Claim 14 of the '144 Patent depends from Claim 9, and Claims 9 and 14 recite (emphasis added):

> 9. A mobile phone, comprising:
> a body having a *practically rectangular shape*, said body having a front surface, a back surface and four side surfaces, wherein the length of the front surface of the mobile phone corresponds to the distance between the ear and the mouth of a user and wherein the width of the front surface of the mobile phone is significantly shorter than the length, and wherein said body has a thin thickness;
> . . . .
>
> * * *
>
> 14. The mobile phone of claim 9, wherein said components of the mobile phone are integrated within the body such that *none of said components is significantly extended out from the body*.

As Plaintiff notes, Claim 9 recites "a practically rectangular shape," which provides context for evaluating whether the components of an accused product "significantly extend[] out from the body."  Further, the specification provides additional context by referring to an "extendable" microphone and an "extendable" display.  *See* '144 Patent at 20:45–49, 21:1–22:43 & 25:25–54; *see also id.* at Figs. 18a, 18d, 18f, 24b & 25b.

- 19 -

The claims and the specification thus provide sufficient context for understanding "significantly extended" with reasonable certainty. The Court therefore hereby expressly rejects Defendants' indefiniteness argument as to "wherein said components of the mobile phone are integrated within the body such that none of said components is significantly extended out from the body" in Claim 14 of the '144 Patent. Defendants present no alternative proposed construction, and no further construction is necessary.

The phrase "noticeably extended out" appears in Claim 1 and also in Claim 19, which depends from Claim 15. Claims 1, 15, and 19 recite (emphasis added):

> 1. A mobile phone device, comprising:
> a practically rectangular-shaped housing within which the components of a mobile phone are integrated, said housing having a front surface, a back surface and four side surfaces, wherein the length of the front surface approximately corresponds to the distance between the ear and the mouth of a user and wherein the width of the front surface is substantially shorter than the length and wherein the housing has a thin thickness; and
> a display unit integrated within the front surface of said housing wherein said display unit practically covers the entire front surface of said housing;
> wherein said mobile phone device does not include a physical key on the front surface, and
> wherein said components of the mobile phone are integrated within said housing such that *none of said components is noticeably extended out from said housing.*
>
> * * *
>
> 15. A mobile phone device, comprising:
> a body having a practically rectangular shape;
> a processor; and
> a display unit, said display unit occupying practically the entire surface of the front surface of said device is integrated within said device;
> wherein plurality of icons corresponding to a plurality of applications are displayed by said processor on said display unit; and
> wherein upon identifying an input corresponding to a sweeping action provided on a touch sensitive surface of said device, said processor displays plurality of other icons corresponding to plurality of other applications on said display unit.
>
> * * *

19. The device of claim 15, wherein said components of the mobile phone are integrated within the body such that *none of said components is noticeably extended out from said the body.*

Unlike the phrase "significantly extended out" in Claim 9 (discussed above), Claims 1 and 19 recite "noticeably," which connotes perception, namely whether something would be *noticed by* someone. This is analogous to *Interval Licensing*, in which the Federal Circuit found that the phrase "unobtrusive manner" was too subjective to be reasonably clear. *See* 766 F.3d at 1369–74. Claim 6 compounds the confusion by reciting: "The device of claim 1, wherein at least one button is *barely extended* from at least one of the side surfaces of the housing." Although "the language of a dependent claim cannot change the scope of an independent claim whose meaning is clear on its face," *Multilayer Stretch Cling Film Holdings, Inc. v. Berry Plastics Corp.*, 831 F.3d 1350, 1360 (Fed. Cir. 2016), this dependent claim demonstrates that the patentee understood "noticeably" to be something greater than "barely," but Plaintiff has not demonstrated that the patent provides any objective boundaries. The opinions of Plaintiff's expert, subjectively characterizing various components as either noticeable or not noticeable, are unpersuasive. (*See* Dkt. No. 75-2, Aug. 1, 2025 Malek Decl. ¶¶ 69–79; *see also id.* ¶¶ 82–84 (citing, e.g., dictionary definitions of "noticeable" as "very obvious," "worthy of notice," or "easily seen").)

Plaintiff's reliance on the Figures is insufficient as to "noticeably extended." The specification states that "the drawings are not necessarily drawn to scale" and "are merely conceptual in nature" (*id.* at 24:64–66), and also "it is well established that patent drawings do not define the precise proportions of the elements and may not be relied on to show particular sizes if the specification is completely silent on the issue." *Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*, 222 F.3d 951, 956 (Fed. Cir. 2000). Although the specification and the Figures provide sufficient objective reference points for interpreting "significantly extended out from the body,"

the word "noticeably" is "'purely subjective' and depends 'on the unpredictable vagaries of any one person's opinion.'" *Intellectual Ventures I LLC v. T-Mobile USA, Inc.*, 902 F.3d 1372, 1381 (Fed. Cir. 2018) (quoting *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350–51 (Fed. Cir. 2005)).

Plaintiff also cites prosecution history in which, when the "noticeably extended" and "significantly extended" limitations were added during prosecution, the patentee stated that the components must not be "noticeably extended" from the housing so as to be "cumbersome":

> Claims 1, and 8, also describe that none of the components of the mobile phone extends out from its housing, permitting to use the device easily and comfortably in portrait position as well as in landscape position. In addition, this also permits to ease the portability of the device as it can be inserted in the user's pocket without being cumbersome.

(Dkt. No. 77, Ex. O, Aug. 16, 2020 Amendment, at p. 7 of 8 of Ex. O.)  This prosecution history, however, does not address the word "noticeably," let alone demonstrate that "noticeably" has any objective boundaries.

Finally, as noted above, Plaintiff's reliance on statements by Defendants or Defendants' expert in IPR proceedings is unpersuasive.

The Court therefore hereby construes these disputed terms as set forth in the following chart.

| Term | Construction |
|---|---|
| "none of said components is noticeably extended out from said housing" ('144 Patent, Claim 1) | **Indefinite** |
| "wherein said components of the mobile phone are integrated within the body such that none of said components is significantly extended out from the body" ('144 Patent, Claim 14) | **Plain meaning** |

| | |
|---|---|
| "none of said components is noticeably extended out from said the body" ('144 Patent, Claim 19) | Indefinite |

**4.  "wherein upon providing a sweeping action on said display unit," "wherein upon identifying an input corresponding to a sweeping action provided on a touch sensitive surface of said device," and "wherein upon providing a predefine[d] interaction with an icon"**

| |
|---|
| **"wherein upon providing a sweeping action on said display unit"** ('144 Patent, Claims 3, 12) <br><br> **"wherein upon identifying an input corresponding to a sweeping action provided on a touch sensitive surface of said device"** ('144 Patent, Claims 15) <br><br> **"wherein upon providing a predefine interaction with an icon"** ('144 Patent, Claims 4, 13) <br><br> **"wherein upon providing a predefined interaction with an icon"** ('144 Patent, Claim 17) |

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning. Not Indefinite. | Indefinite |

(Dkt. No. 96, Ex. A, at 44–45; Dkt. No. 100, Ex. A, at 11.)

    (a)  The Parties' Positions

    Plaintiff argues that Defendants cannot meet their burden to show indefiniteness for these terms because Defendants have not submitted any expert opinion in support, and, "[f]urther, Defendants' IPR expert admitted that a POSITA would understand these terms, and applied them to the prior art without issue . . . ."  (Dkt. No. 70, at 16 (citations omitted).)

    Defendants respond that these claims are improper mixed method-apparatus claims because they are "unclear whether infringement occurs when one creates a mobile device that allows the action to be performed, or whether infringement occurs when the user actually performs the claimed action."  (Dkt. No. 72, at 21 (citation omitted).)

Plaintiff replies that "none of the disputed terms require a human 'user' to perform any action." (Dkt. No. 77 at 5.) Plaintiff argues that "in context, the cited claim language is reciting the capability of a structure, the 'processor,' in the claimed apparatus and is thus not indefinite." (*Id.* at 7 (citations omitted).) Plaintiff also argues that "dependent claims 3–4 and 12–13 claim the capability of the 'display unit' in response to user input but do not claim any action by a user." (*Id.* at 7–8.)

At the December 15, 2025 hearing, the parties presented oral arguments.

(b)  Analysis

As a threshold matter, as noted above, Plaintiff's reliance on Defendants' statements in IPR proceedings is unpersuasive.

Turning to the dispute regarding purported mixed method-apparatus claiming, the Federal Circuit has stated:

> A single patent may include claims directed to one or more of the classes of patentable subject matter, but no single claim may cover more than one subject matter class. *IPXL Holdings*[*, LLC v. Amazon.com, Inc.*], 430 F.3d [1377,] 1384 [(Fed. Cir. 2005)] (holding indefinite a claim covering both an apparatus and a method of using that apparatus).

*Microprocessor Enhancement Corp. v. Tex. Instruments Inc.*, 520 F.3d 1367, 1374 (Fed. Cir. 2008); *see H-W Tech, L.C. v. Overstock.com, Inc.*, 758 F.3d 1329, 1335 (Fed. Cir. 2014) (finding claim indefinite because "it is unclear when infringement occurs").

Here, Claim 3 of the '144 Patent, which Defendants submit is representative (Dkt. No. 72, at 21), depends from Claim 1, and Claims 1 and 3 recite (emphasis added):

> 1. A mobile phone device, comprising:
>      a practically rectangular-shaped housing within which the components of a mobile phone are integrated, said housing having a front surface, a back surface and four side surfaces, wherein the length of the front surface approximately corresponds to the distance between the ear and the mouth of a user and wherein

the width of the front surface is substantially shorter than the length and wherein
the housing has a thin thickness; and

a display unit integrated within the front surface of said housing wherein
said display unit practically covers the entire front surface of said housing;

wherein said mobile phone device does not include a physical key on the
front surface, and

wherein said components of the mobile phone are integrated within said
housing such that none of said components is noticeably extended out from said
housing.

* * *

3. [The] device of claim 1, wherein plurality of icons corresponding to plurality of
applications are displayed on said display unit, and *wherein upon providing a
sweeping action on said display unit*, plurality of other icons corresponding to
plurality of other applications are displayed on said display unit.

Claims 15 and 17 recite (emphasis added):

15. A mobile phone device, comprising:

a body having a practically rectangular shape;

a processor; and

a display unit, said display unit occupying practically the entire surface of
the front surface of said device is integrated within said device;

wherein plurality of icons corresponding to a plurality of applications are
displayed by said processor on said display unit; and

wherein upon identifying an input corresponding to a sweeping action
provided on a touch sensitive surface of said device, said processor displays
plurality of other icons corresponding to plurality of other applications on said
display unit.

* * *

17. The device of claim 15, *wherein upon providing a predefined interaction with
an icon*, the corresponding application is opened on the screen.

Plaintiff does not appear to dispute that the "sweeping action" and the "predefined

interaction with an icon" would be performed by a user. To whatever extent this is in dispute, the

context provided by surrounding claim language is sufficiently clear.

- 25 -

The parties dispute whether these limitations are directed to the configuration of the claimed device or, instead, recite method steps such that these are impermissible mixed method-apparatus claims.

The *H-W Technology* case cited by Defendants is unpersuasive because, in the present case, these claims recite how the device *responds*, so it is not "unclear when infringement occurs." *H-W Tech.*, 758 F.3d at 1335.  Because these claims recite how the device responds "wherein upon" a particular user action occurs, these claims "merely use permissible functional language to describe the capabilities of the claimed system" such that "it is clear that infringement occurs when one makes, uses, offers to sell, or sells the claimed system." *Mastermine Software, Inc. v. Microsoft Corp.*, 874 F.3d 1307, 1316 (Fed. Cir. 2017); *see id.* ("While these claims make reference to user selection, they do not explicitly claim the user's act of selection, but rather, claim the system's capability to receive and respond to user selection."); *see also Microprocessor Enhancement*, 520 F.3d at 1375 ("apparatus claims are not necessarily indefinite for using functional language").

The Court therefore hereby expressly rejects Defendants' indefiniteness arguments. Defendants present no alternative proposed construction, and no further construction is necessary.

The Court accordingly hereby construes "wherein upon providing a sweeping action on said display unit," "wherein upon identifying an input corresponding to a sweeping action provided on a touch sensitive surface of said device," and "wherein upon providing a predefine[d] interaction with an icon" to have their **plain meaning**.

**5. "said display unit practically covers the entire front surface of said housing," "said display unit practically occupying the entire front surface of the mobile phone," and "said display unit occupying practically the entire surface of the front surface of said device"**

| | |
|---|---|
| **"said display unit practically covers the entire front surface of said housing"**<br>('144 Patent, Claim 1)<br><br>**"said display unit practically occupying the entire front surface of the mobile phone"**<br>('144 Patent, Claim 9)<br><br>**"said display unit occupying practically the entire surface of the front surface of said device"**<br>('144 Patent, Claim 15)| |
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning. Not Indefinite. | Indefinite |

(Dkt. No. 96, Ex. A at 48; Dkt. No. 100, Ex. A, at 13–15.)

<u>(a) The Parties' Positions</u>

Plaintiff argues that "[t]he intrinsic evidence sets forth clear metrics that 'said display unit practically covers/occupying the entire front surface' is met when the size of the display unit is not limited by the presence of separate components like push-button keys, microphones, or speakers occupying real estate on the front surface of the device." (Dkt. No. 97, at 1.) Plaintiff submits that "[t]he '144 patent claims priority to 2003, which is 4 years before the release of the first iPhone and 6 years before the release of the first Samsung Galaxy phone," and Plaintiff argues that the art at that time included several front-facing components, such as a keypad, microphone, and speaker, that limited the available space for a front-facing display. (*Id.*, at 1–2.) Plaintiff also submits that the specification discloses using "soft keys" on the display screen as well as moving the speaker and microphone to an earpiece. (*See id.*, at 2–4.) Further, Plaintiff argues that "[a] POSA would understand that, in manufacturing and assembling mobile phones, there often has to be a bezel or

physical structure around the display on the front surface to hold it in place and integrate the display unit into the structure of the device." (*Id.*, at 5 (citation omitted).)  Finally, Plaintiff argues that "[s]ince Figure 68a [of the '144 Patent] indisputably has a bezel preventing the display unit from covering the entirety of the front surface, it is clear that Plaintiff is *not* reading 'practically' out of the claims and requiring that the display unit 'fully cover' the entire front surface." (*Id.*, at 7.)

Defendants respond that these "practically" terms are terms of degree, and "[t]he specification provides no guidance on *how much* can be uncovered/unoccupied and still fall within the scope of the claims." (Dkt. No. 98, at 2; *see id.*, at 3–4.)  Defendants also argue that, in IPR proceedings, "Keyless rooted its argument on the presence of any components on the front surface [in cited references], effectively removing the term 'practically' from the claims." (*Id.*)  Defendants urge that "[a] POSITA, trying to reconcile the claim language and the figures in the '144 patent with Keyless's IPR arguments, is left without any reasonable certainty about when components that occupy real estate on the front surface take the device outside the scope of the claims and when they do not." (*Id.*, at 6 (citation omitted).)  Finally, Defendants argue that their expert's opinions in the IPR proceedings do not undermine Defendants' indefiniteness argument because "the law distinguishes between claims with a 'wholly undefined claim element'—which 'cannot be compared to the prior art for purposes of an invalidity analysis'—and claims whose scope is indefinite but nonetheless can be challenged because the prior art indisputably reads on the claims." (*Id.*, at 8 (quoting *Cochlear Bone*, 958 F.3d at 1359-60).)

At the December 15, 2025 hearing, the parties presented oral arguments.

(b)  Analysis

Claim 1 of the '144 Patent, for example, recites (emphasis added):

1. A mobile phone device, comprising:

a practically rectangular-shaped housing within which the components of a mobile phone are integrated, said housing having a front surface, a back surface and four side surfaces, wherein the length of the front surface approximately corresponds to the distance between the ear and the mouth of a user and wherein the width of the front surface is substantially shorter than the length and wherein the housing has a thin thickness; and

a display unit integrated within the front surface of said housing *wherein said display unit practically covers the entire front surface of said housing*;

wherein said mobile phone device does not include a physical key on the front surface, and

wherein said components of the mobile phone are integrated within said housing such that none of said components is noticeably extended out from said housing.

In IPR2025-00528, Plaintiff argued as follows regarding the "Bast" and "Wedel" references:

Making the display "as large as possible" and using "all the available space" on the front surface is merely relative to what is "possible" and "available" for Bast's device; yet it still falls short of a display that "practically covers the entire front surface of said housing" as claimed.

Bast's front face contains (at least) a screen 2 that is constrained by a microphone 3 disposed below the screen and a loudspeaker 4 disposed above the screen. Both the speaker and the microphone occupy real estate on Bast's front surface preventing Bast's screen from practically covering the entire front surface. Thus, while Bast states that the screen is "as large as possible" and that "the screen uses all the space available," Bast's screen does not practically cover the entire front surface of the housing, as claimed. Bast's screen is bound and limited by the other components on its front surface that prevent the claimed coverage.



**Figure 1**

EX1022, FIG. 1.

* * *

> Petitioner's proposed combination of Bast and Wedel neglects to address the microphones and speaker outlets occupying real estate on the front surface and preventing their respective displays from practically covering the entire front surface of the housing as claimed.

(Dkt. No. 98, Ex. 2, IPR2025-00528, July 9, 2025 Patent Owner Preliminary Response, at 17–18

& 24–25 (citations omitted).)  Similarly, in IPR2025-00529, Plaintiff argued as follows regarding

the "Pensjo" reference:

> [A] POSA would have understood that features such as a speaker, a microphone, and/or buttons to power the device on or off, adjust a volume of the device, or return the display to a home screen with a home button were commonly located on the front surface, above, below, or to the sides of the display. However, Pensjo does not show these components anywhere—not because these common features are not present in the device, but because Pensjo's specification is narrowly drafted to describe only the pen detection mechanism.
>
> . . . As shown in Pensjo's Figures 1, 3, and 5, the display covers a portion of the front surface, but there are spaces above and below the display that would accommodate common components such as buttons, microphones, and/or speakers. Indeed, theses [sic] spaces would reasonable [sic] teach a POSA that such components would occupy this real estate above and below the display on the front surface of Pensjo's device. Accordingly, Pensjo does not disclose that the display unit practically covers the entire front surface of the housing.

(*Id.*, Ex. 3, IPR2025-00529, July 9, 2025 Patent Owner Preliminary Response, at 21–22.)

These statements by Plaintiff in IPR proceedings can be considered during claim

construction because a patent owner's statements in an IPR proceeding are part of an examination

of the patent.  *See Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1360–62 (Fed. Cir. 2017).

Defendants characterize these IPR statements as interpreting the claims to require a display

unit that covers *all* of the front surface of the housing.  In evaluating Defendants' argument, three

legal principles are noteworthy.  First, "[a]llowing a patentee to argue that physical structures and

characteristics specifically described in a claim are merely superfluous would render the scope of

the patent ambiguous, leaving examiners and the public to guess about which claim language the drafter deems necessary to his claimed invention and which language is merely superfluous, nonlimiting elaboration." *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006). Second, "[c]laims may not be construed one way in order to obtain their allowance and in a different way against accused infringers." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995). Third, "the scope of surrender is not limited to what is absolutely necessary to avoid a prior art reference; patentees may surrender more than necessary." *Tech. Props. Ltd. LLC v. Huawei Techs. Co., Ltd.*, 849 F.3d 1349, 1359 (Fed. Cir. 2017) (citation omitted).

Even when considering these principles, though, these IPR statements do not give rise to any lack of reasonable certainty in the claim language because the statements are expressly directed to: the "screen 2," "microphone 3," and "loudspeaker 4" of Bast; and the speaker, microphone, power button, volume button(s), and home button that Plaintiff infers are present in Pensjo. This point is emphasized by the Patent Owner Preliminary Response in IPR2025-00528 having reproduced Figure 1 of Bast. (Dkt. No. 98, Ex. 2, IPR2025-00528, July 9, 2025 Patent Owner Preliminary Response, at 18.) Indeed, Plaintiff there expressly argued that "Bast's screen is bound and limited by *the other components on its front surface* that prevent the claimed coverage." (*Id.*, at 17 (emphasis added).)

To whatever extent Defendants' interpretation of Plaintiff's statements is plausible, the existence of multiple reasonable interpretations undercuts Defendants' reliance on these statements. *Tech. Props. Ltd. LLC v. Huawei Techs. Co., Ltd.*, 849 F.3d 1349, 1357–58 (Fed. Cir. 2017); *see id.* ("If the challenged statements are ambiguous or amenable to multiple reasonable interpretations, prosecution disclaimer is not established.") (citation omitted); *see also Golight,*

*Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1332 (Fed. Cir. 2004) ("Because the statements in
the prosecution history are subject to multiple reasonable interpretations, they do not constitute a
clear and unmistakable departure from the ordinary meaning of the term . . . .") (citation omitted);
*Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003) ("prosecution disclaimer
promotes the public notice function of the intrinsic evidence and protects the public's reliance on
*definitive statements* made during prosecution") (emphasis added).  The opinions of Defendants'
expert in this regard are likewise unpersuasive.  (Dkt. No. 76-1, Aug. 1, 2025 Terveen ¶¶ 62–64.)
Also, the *Teva* case, cited by Defendants, noted prosecution statements that defined molecular
weight in conflicting ways, but the finding of indefiniteness was based on there being multiple
known ways of measuring "molecular weight," and *Teva* is therefore not analogous to the present
case.  *See Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1341–45 (Fed. Cir. 2015); *see
also Infinity Comput. Prods., Inc. v. Oki Kata Ams., Inc.*, 987 F.3d 1053, 1059–60 (Fed. Cir. 2021)
(discussing *Teva*, and cited here by Defendants).

The specification provides context for understanding "practically" by disclosing
modifications to "the mobile phone which is now used [[as of the earliest listed priority date, in
2003]] for the tasks such as text messaging and the internet[] and [which] is predicted to become
a mobile computing device":

> [T]he (complicated) data entry systems of the mobile phones require the use of
> many keys, using a substantial surface of the phone, providing slow data entry, and
> leaving a small area for a small (e.g. narrow) display unit.

'144 Patent at 69:21–29; *see id.* at Fig. 66 (illustrating various devices).  As for a speaker and a
microphone, the specification discloses that an "ear-integrated unit" can be used.  *Id.* at 32:3–8.
As for a keypad, the specification discloses for example using "soft" keys, which are shown on a
touchscreen display.  *Id.* at 77:26–29 ("[I]t is understood that other kinds of keys such as virtual

- 32 -

(soft) keys may be used with the data entry system of the invention."); *see id.* at 91:49–52 ("instead of physical keys (e.g. 6501-6506), virtual (e.g. soft) keys may be defined on a display unit . . ."); *see also id.* at 72:65–73:2 ("virtual (e.g. soft) keys").  Alternatively, the specification discloses that using a "standalone keypad may permit to integrate a display unit covering substantially a whole side of said electronic device."  *Id.* at 78:11–12.

The specification also provides an example, illustrated in Figure 68a, of a display that "substantially covers" a surface:

> Figure 68*a* shows an electronic device 6810 using the tilting data entry system of the invention, and *wherein a large display 6811 substantially covers the surface of at least one side* of said electronic device.

*Id.* at 98:2–6 (emphasis added).  Figure 68a is reproduced here:



Fig. 68a

Plaintiff's expert persuasively opines that Figure 68a illustrates a bezel around the display 6811, which Plaintiff's expert persuasively explains is often necessary for manufacturing reasons:

> A POSA would understand that the claim term "practically" addresses the reality that, in manufacturing mobile phones, there often has to be a bezel or physical structure around the display on the front surface to hold it in place and integrate it into the structure of the device as a whole. That is reflected in the '144 patent's figures such as 68a where the display practically covers the entire front surface of the device and the display unit is limited only by the bezel required for physical assembly of the device.

(Dkt. No. 97-9, Nov. 28, 2025 Malek Suppl. Decl. ¶ 35.)

Plaintiff thus persuasively argues that, for example, "a display unit practically covers or occupies the entire front surface when the size of the display extends across the front surface and is not limited by the presence of separate components like push-button keys, microphones, or speakers that occupy their own distinct space on the front surface (*i.e.*, not embedded or integrated with the display unit)." (Dkt. No. 97, at 6.) "[A]bsolute or mathematical precision is not required." *Interval Licensing*, 766 F.3d at 1370.

Finally, Defendants note that the patentee amended Claim 1 to change "substantially entirely covers said front surface" to "practically covers the entire front surface," but this change occurred amidst many amendments to the claim language, and Defendants identify no statements by the patentee regarding any purported significance of removing "substantially" and adding "practically." *See* Dkt. No. 98, Ex. 4, Amendment (p. 11 of 16 of Ex. 4).

The Court therefore hereby expressly rejects Defendants' indefiniteness argument. Defendants present no alternative proposed constructions, and any remaining disputes regarding "practically" pertain to factual disputes regarding infringement rather than any legal dispute for claim construction. *See, e.g., PPG*, 156 F.3d at 1355.

The Court accordingly hereby construes "said display unit practically covers the entire front surface of said housing," "said display unit practically occupying the entire front surface of the mobile phone," and "said display unit occupying practically the entire surface of the front surface of said device" to have their **plain meaning**.

## V.  DISPUTED TERMS IN U.S. PATENT NO. 9,304,602

As a threshold matter, Plaintiff argues that "[t]he fact that the examiner, the parties, and their experts applied these terms during prosecution and in the IPR further supports a conclusion that the claims are not indefinite" (Dkt. No. 70, at 26), but an IPR petition cannot assert

indefiniteness.  *See* 35 U.S.C. § 311(b); *see also Cuozzo Speed*, 136 S. Ct. at 2141–42; *Samsung*, 948 F.3d at 1355.  Also, the Federal Circuit has found that "indefiniteness of a claim does not always imply inability to conduct a prior-art analysis needed for an inter partes review."  *See Cochlear Bone*, 958 F.3d at 1359–60 (citation omitted).  The IPR proceedings cited by Plaintiff therefore do not significantly affect the Court's analysis.

**6. "wherein a gliding action provided from outside of the touch screen towards inside of the touch screen, said gliding action at first interacting with said at least one window on the touch screen, is processed by said processor" and "wherein said gliding action is provided from outside the touchscreen towards inside the touch screen, wherein said gliding action at first interacts with said zone on said touch screen"**

| "wherein a gliding action provided from outside of the touch screen towards inside of the touch screen, said gliding action at first interacting with said at least one window on the touch screen, is processed by said processor"<br>('602 Patent, Claim 1) ||
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning. Not Indefinite. | Indefinite<br><br>Alternatively:<br>    "wherein a gliding action determined to start outside of the touch screen, to continue onto the touch screen, and to first contact the touch screen within said at least one window is processed by said processor" |

| "wherein said gliding action is provided from outside the touchscreen towards inside the touch screen, wherein said gliding action at first interacts with said zone on said touch screen" ('602 Patent, Claim 33) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning. Not Indefinite. | Indefinite<br><br>Alternatively:<br>    "wherein said gliding action determined to start outside of the touch screen, to continue onto the touch screen, and to first interact with the touch screen within said zone is processed by said processor" |

(Dkt. No. 96, Ex. A, at 1; Dkt. No. 100, Ex. A, at 1.)

(a)  The Parties' Positions

Plaintiff argues that Defendants cannot meet their burden to show indefiniteness for these terms because Defendants have not submitted any expert opinion in support, and Plaintiff also submits that "the specification repeatedly describes a 'gliding action' that moves from outside the touchscreen towards the inside of the touchscreen." (Dkt. No. 70, at 18.)  Plaintiff also argues that "Defendants' alternative construction introduces more ambiguity into the claim." (*Id.*, at 20 (citation omitted).)

Defendants respond that these claims are improper mixed method-apparatus claims because "these gliding actions require user action," and "[t]he claimed 'gliding action' is not tied to any structure recited in the claims." (Dkt. No. 72, at 23.)  Defendants argue: "For example, the claims do not specify any structure outside of the touch screen or specify how any part of the system would know whether a gliding action was provided from outside of the touch screen or was instead provided from the edge of the touch screen.  This shows that infringement depends on whether the user performs the required gliding action (a method step), rather than any system

- 36 -

capabilities." (*Id.*)  Further, Defendants argue that "[t]his system cannot distinguish between gliding actions that start from the edge of the touch screen and gliding actions that start from outside of the touch screen," and "[w]hether the 'gliding action' requirements of claims 1 and 33 are satisfied therefore depends solely on whether the user performs a gliding action starting outside the touch screen, not any system capability." (*Id.* (citations omitted).)  Defendants urge: "Keyless's 'plain and ordinary meaning' construction fails to explain how the processor could process 'a gliding action provided from outside of the touch screen' without determining whether a gliding action starts outside of the touch screen.  To hold otherwise either confirms that the gliding action is a method step divorced from any recited structure and requires user action, or reads 'provided from outside of the touch screen' out of the claim." (*Id.*, at 25.)

Plaintiff replies that "none of the disputed terms require a human 'user' to perform any action." (Dkt. No. 77 at 5.)  Plaintiff argues that "these 'wherein' clauses are properly describing capabilities of the 'processor' and the system's capability to receive and respond to a user selection and are thus not indefinite." (*Id.* at 8 (citations omitted).)

At the December 15, 2025 hearing, the parties presented oral arguments.  Defendants argued that these terms recite actions without being tied to any particular structure.  Plaintiff responded that these terms recite capabilities of the recited processor.

(b)  Analysis

Claim 1 of the '602 Patent, for example, recites (emphasis added):

1. A system for capturing an event provided from an edge of a touch screen comprising:
    a device having a touch screen;
    at least one window located in the touch screen on an edge of the touch screen, wherein said at least one window functions independently of an interface of an application in use on the touch screen; and
    a processor;

- 37 -

> *wherein a gliding action provided from outside of the touch screen towards inside of the touch screen, said gliding action at first interacting with said at least one window on the touch screen, is processed by said processor* to cause an action assigned to said window, and wherein said at least one window is located on the touch screen before said gliding action begins.

Much like for the above-discussed "sweeping" and "interaction" terms discussed above as to the '144 Patent, the *H-W Technology* case cited by Defendants is unpersuasive because the claims recite how the gliding action is used by the claimed system. It is therefore not "unclear when infringement occurs." *H-W Tech.*, 758 F.3d at 1335. These disputed terms in Claims 1 and 33 of the '602 Patent recite "wherein a gliding action . . . is processed by said processor to cause an action" (Claim 1) and "wherein a gliding action . . . interacts with" a "zone on said touch screen" (Claim 33), so these claims "merely use permissible functional language to describe the capabilities of the claimed system" such that "it is clear that infringement occurs when one makes, uses, offers to sell, or sells the claimed system." *Mastermine*, 874 F.3d at 1316; *see Microprocessor Enhancement*, 520 F.3d at 1375 ("apparatus claims are not necessarily indefinite for using functional language").

Likewise, the determination of whether a gliding action is "provided from outside of the touch screen" is a determination by the recited system. Defendants' alternative proposed constructions are directed to this but should be modified to explicitly recite that the determination is "by the system." This is also consistent with disclosure in the specification. *See* '602 Patent at 60:43–49 ("If the user desired to change the location of (a portion of) said keypad, he may provide a gliding action 311006 departing from the edge 313012 of the screen (e.g. obviously, the gliding action may begin from out of the screen but the system considers the departing point from the edge of the screen) towards his desired location inside the screen."); *see also id.* at Fig. 25A; *id.* at

33:65–67 ("In some embodiments of the invention, each sweeping gesture must begin from a state

in which the user's finger does not touch the screen 320.").

The Court therefore hereby construes these disputed terms as set forth in the following

chart:

| Term | Construction |
|---|---|
| "wherein a gliding action provided from outside of the touch screen towards inside of the touch screen, said gliding action at first interacting with said at least one window on the touch screen, is processed by said processor"<br><br>('602 Patent, Claim 1) | **"wherein a gliding action, determined by the system to have started outside of the touch screen, to have continued toward and onto the touch screen, and to have first interacted with the touch screen within said at least one window, is processed by said processor"** |
| "wherein said gliding action is provided from outside the touchscreen towards inside the touch screen, wherein said gliding action at first interacts with said zone on said touch screen"<br><br>('602 Patent, Claim 33) | **"wherein a gliding action, determined by the system to have started outside of the touch screen, to have continued toward and onto the touch screen, and to have first interacted with said touch screen by interacting with said zone, is processed by said processor"** |

**7. "a gliding action provided from said zone of the touch screen towards any arbitrary direction inside the touch screen at first interacts with said zone"**

| **"a gliding action provided from said zone of the touch screen towards any arbitrary direction inside the touch screen at first interacts with said zone"**<br>('602 Patent, Claim 19) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning. Not Indefinite. | Indefinite |

(Dkt. No. 96, Ex. A, at 7; Dkt. No. 100, Ex. A, at 2.)

(a)  The Parties' Positions

Plaintiff argues that Defendants cannot meet their burden to show indefiniteness for these terms because Defendants have not submitted any expert opinion in support, and Plaintiff urges that "[t]o the extent [Defendants' argument] is based on 'arbitrary direction,' a POSITA, as well as a layman, would understand that this just means any direction, which is consistent with the intrinsic evidence."  (Dkt. No. 70, at 21 (citation omitted).)

Defendants respond that this is an improper mixed method-apparatus claim because "the 'gliding action' limitation is a method step requiring user interaction and is divorced from any structure or any other function of the claimed system."  (Dkt. No. 72, at 25.)

Plaintiff replies that "none of the disputed terms require a human 'user' to perform any action."  (Dkt. No. 77 at 5.)

At the December 15, 2025 hearing, the parties presented oral arguments.

(b)  Analysis

Legal principles regarding mixed method-apparatus claims are set forth as to the "sweeping action" and "predefined interaction" terms in the '144 Patent, discussed above.

Claim 19 of the '602 Patent (as set forth in a Certificate of Correction dated February 16, 2021) recites (emphasis added):

> 19. A system for capturing an event provided from an edge of a touch screen comprising:
>     a device having a touch screen;
>     a zone in form of a bar located in the touch screen on an edge of the touch screen; and
>     a processor;
>     *wherein a gliding action provided from said zone of the touch screen towards any arbitrary direction inside the touch screen at first interacts with said zone*, and wherein the processor executes a function related to said zone, and wherein said zone is present on said edge regardless of the interface of an application on said touch screen, and wherein said zone is located on the touch screen before said gliding action begins.

- 40 -

As with the above-discussed "gliding action" terms in Claims 1 and 33 of the '602 Patent, Claim 19 recites how the gliding action is used by the system (by the processor executing a function related to the zone with which the gliding action "interacts"). Defendants argue that "[t]here is no recited trigger for the processor executing the function" (Dkt. No. 72 at 26), but the claim need not recite a "trigger" for the claim to be sufficiently clear that a relationship exists between the gliding action, a zone, and the processor. The existence of this relationship is a matter of system configuration, and it is therefore not "unclear when infringement occurs." *H-W Tech*, 758 F.3d at 1335. This claim thus "merely use[s] permissible functional language to describe the capabilities of the claimed system" such that "it is clear that infringement occurs when one makes, uses, offers to sell, or sells the claimed system." *Mastermine*, 874 F.3d at 1316; *see Microprocessor Enhancement*, 520 F.3d at 1375 ("apparatus claims are not necessarily indefinite for using functional language").

The *Power Integrations* case cited by Defendants is distinguishable in light of the presently recited relationship between the gliding action, a zone, and the processor. *See Power Integrations, Inc. v. ON Semiconductor Corp.*, No. 16-CV-06371-BLF, 2018 WL 5603631, at *15 (N.D. Cal. Oct. 26, 2018) (Freeman, J.) ("said control signal being provided when no feedback signal is provided at said feedback input and said duty cycle signal is in said high state"; finding that "[a] review of th[e] relevant case law makes clear that the disputed term is indefinite because it recites functional language divorced from any recited structure") (discussing, e.g., *Rembrandt Data Techs., LP v. AOL, LLC*, 641 F.3d 1331, 1339 (Fed. Cir. 2011)).

The Court therefore hereby expressly rejects Defendants' indefiniteness arguments. Defendants present no alternative proposed construction, and no further construction is necessary.

The Court accordingly hereby construes "a gliding action provided from said zone of the touch screen towards any arbitrary direction inside the touch screen at first interacts with said zone" to have its **plain meaning**.

**8. "substantial portion of an edge of the touch screen" / "substantial portion of said edge"**

| "substantial portion of an edge of the touch screen" "substantial portion of said edge" ('602 Patent, Claims 4, 16, 36) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning. Not Indefinite. | Indefinite |

(Dkt. No. 96, Ex. A, at 12; Dkt. No. 100, Ex. A, at 2.)

(a)  The Parties' Positions

Plaintiff argues that "substantial" is a permissible word of approximation and that "[a] POSITA would reasonably understand these terms in the context of the '602 patent."  (Dkt. No. 70, at 22 (citation omitted); *see id.* at 22-24.)

Defendants respond that these are terms of degree and that "[t]he intrinsic and extrinsic evidence fails to provide such an objective boundary here, rendering the claims indefinite."  (Dkt. No. 72, at 13 (citation omitted).)  In particular, Defendants argue that "[t]he '602 patent lacks any guidance for determining an objective boundary where the bar/window/zone occupies a portion of the screen but is no longer 'substantial.'"  (*Id.* (citation omitted).)  Defendants urge that although mathematical precision is not required, here there are no objective boundaries at all.  (*Id.* at 14.)

Plaintiff replies that quantitative boundaries are not required and that, based on the claim language, "[a] POSITA would thus understand 'substantial portion' to encompass a portion of the touch screen that allows the gliding action to interact with the bar and be processed by the

processor thereby 'allow[ing] the claim's purpose to be effectuated.'"  (Dkt. No. 77 at 4 (citing *Ironburg Inventions Ltd. v. Valve Corp.*, 64 F.4th 1274, 1288 (Fed. Cir. 2023).)

At the December 15, 2025 hearing, the parties presented oral arguments.  Defendants argued that this term is not reasonably clear as to a lower boundary for how much is necessary so as to be "substantial."

(b)  Analysis

Claim 4 of the '602 Patent, for example, depends from Claim 3, and Claims 3 and 4 recite (emphasis added):

> 3. The system of claim 1, wherein said at least one window comprises at least one bar located on said edge of the screen.
>
> 4. The system of claim 3, wherein said at least one bar extends along a *substantial portion of an edge of the touch screen.*

Defendants argue that the '602 Patent sets forth no "objective boundary," particularly as to how large a "portion" must be in order to qualify as a "substantial portion."  (Dkt. No. 72, at 14 (quoting *Interval Licensing*, 766 F.3d at 1371); citing *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1364 (Fed. Cir. 2018)).)

The Federal Circuit has "rejected the proposition that claims involving terms of degree are inherently indefinite."  *Sonix*, 844 F.3d at 1377.  "[W]ords of approximation, such as 'generally' and 'substantially,' are descriptive terms commonly used in patent claims to avoid a strict numerical boundary to the specified parameter."  *Anchor Wall*, 340 F.3d at 1310–11; *see Verve*, 311 F.3d at 1120 ("Expressions such as 'substantially' are used in patent documents when warranted by the nature of the invention, in order to accommodate the minor variations that may be appropriate to secure the invention."); *see also Deere*, 703 F.3d at 1359 ("This court has repeatedly confirmed that relative terms such as 'substantially' do not render patent claims so

- 43 -

unclear as to prevent a person of skill in the art from ascertaining the scope of the claim."); *see, e.g., Exmark*, 879 F.3d at 1347 ("substantially straight"); *ESCO Grp. LLC v. Deere & Co.*, No. 1:20-CV-1679-RGA-JLH, 2022 WL 1025967, at *8 (D. Del. Apr. 6, 2022) ("substantially along an entire length of the socket").

In the present case, the understanding of a person of skill in the art would be informed by the specification providing context regarding manners and objectives of interactions with an edge of the touch screen, and in particular Plaintiff cites Figure 25A and associated disclosures in the specification regarding "portions." '602 Patent at 60:10–61:8; *see Ironburg Inventions Ltd. v. Valve Corp.*, 64 F.4th 1274, 1288 (Fed. Cir. 2023) ("The need to meet the purpose of the claimed invention . . . helps inform one of ordinary skill's understanding of the scope of the claims with reasonable certainty."); *see also Exmark*, 879 F.3d at 1345–47. On balance, this is sufficient, especially when considering that the definiteness standard of *Nautilus* does not require mathematical precision. *See Niazi*, 30 F.4th at 1347 ("While there must be objective boundaries, we have explained that a patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement. . . . Indeed, patentees often use descriptive words . . . to avoid a strict numerical boundary to the specified parameter.") (internal quotations and modifications omitted); *see also Sonix*, 844 F.3d at 1378–79.

Finally, Defendants cite Plaintiff's infringement contentions (Dkt. No. 72, at 14 (citing *id.*, Ex. 1, at 33–35, 50–51 & 61–62)), but whatever "line-drawing" might be necessary in evaluating alleged infringement is a question of fact for the finder of fact and does not warrant any finding of indefiniteness. *Acumed LLC*, 483 F.3d at 806 ("[t]he resolution of some line-drawing problems . . . is properly left to the trier of fact") (citing *PPG*, 156 F.3d at 1355); *Eon*, 815 F.3d at 1318–19

(citing *PPG*, 156 F.3d at 1355; citing *Acumed*, 483 F.3d at 806).  The opinions of Defendants' expert in this regard are unpersuasive.  (Dkt. No. 76-1, Aug. 1, 2025 Terveen Decl. ¶¶ 21–27.)

The Court therefore hereby expressly rejects Defendants' indefiniteness arguments. Defendants present no alternative proposed construction, and no further construction is necessary.

The Court accordingly hereby construes "substantial portion of an edge of the touch screen" and "substantial portion of said edge" to have their **plain meaning**.

**9.  "substantially equal to a length of the gliding action"**

| "substantially equal to a length of the gliding action" ('602 Patent, Claims 8, 11, 26, 30, 35) ||
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning. Not Indefinite. | Indefinite |

(Dkt. No. 96, Ex. A, at 16; Dkt. No. 100, Ex. A, at 3.)

(a)  The Parties' Positions

Plaintiff argues that "substantial" is a permissible word of approximation and that "[a] POSITA would reasonably understand these terms in the context of the '602 patent." (Dkt. No. 70, at 22 (citation omitted); *see id.* at 22–24.)

Defendants respond that "[t]hese claims each recite a term of degree because they require a length of a portion of an interface to be 'substantially equal to a length of the gliding action.'" (Dkt. No. 72, at 15 (citation omitted).)  Defendants argue that the specification "says nothing about either the length of the gliding action or the length of the portions of the keypad shown on the screen, let alone whether they are 'equal' or 'substantially equal.'" (*Id.*, at 16 (citation omitted).)

Plaintiff replies that objective boundaries are not required and that "[a] POSITA would find the 'substantially equal' terms easily understandable as the plain language describes

- 45 -

displaying a portion of an interface along with the movement of a finger gliding on the touch

screen." (Dkt. No. 77 at 5 (citation omitted).)

At the December 15, 2025 hearing, the parties presented oral arguments. Defendants

argued that this term is indefinite both because "substantially equal" is an unclear term of degree

and because the "length of the gliding action" is unclear.

(b)  Analysis

Claim 8 of the '602 Patent, for example, depends from Claim 7, which in turn depends

from Claim 5, which in turn depends from Claim 3, which in turn depends from Claim 1. Claims 1,

3, 5, 7, and 8 recite (emphasis added):

> 1. A system for capturing an event provided from an edge of a touch screen
> comprising:
>     a device having a touch screen;
>     at least one window located in the touch screen on an edge of the touch
> screen, wherein said at least one window functions independently of an interface of
> an application in use on the touch screen; and
>     a processor;
>     wherein a gliding action provided from outside of the touch screen towards
> inside of the touch screen, said gliding action at first interacting with said at least
> one window on the touch screen, is processed by said processor to cause an action
> assigned to said window, and wherein said at least one window is located on the
> touch screen before said gliding action begins.
>
> * * *
>
> 3. The system of claim 1, wherein said at least one window comprises at least one
> bar located on said edge of the screen.
>
> * * *
>
> 5. The system of claim 3, wherein said bar is in a form of a line.
>
> * * *
>
> 7. The system of claim 5, wherein said action is displaying a portion of an interface
> on the screen.

- 46 -

8. The system of claim 7, wherein during said gliding action, *a length of the portion of the interface being displayed is substantially equal to a length of the gliding action.*

As for "substantially equal," the claim recites a relationship between "a length of the portion of the interface being displayed" and "a length of the gliding action."  Defendants argue that the '602 Patent "provides no examples from which a skilled artisan could determine an objective boundary for this term."  (Dkt. No. 72, at 15 (citing *Berkheimer*, 881 F.3d at 1364).) Legal principles regarding "substantial" are set forth as to the terms "substantial portion of an edge of the touch screen" and "substantial portion of said edge," above, and the Court reaches the same conclusion here that this "substantially" term is not indefinite.  *See, e.g., Anchor Wall*, 340 F.3d at 1310–11 ("[W]ords of approximation, such as 'generally' and 'substantially,' are descriptive terms commonly used in patent claims to avoid a strict numerical boundary to the specified parameter."); *Verve*, 311 F.3d at 1120; *Deere*, 703 F.3d at 1359; *Acumed LLC*, 483 F.3d at 806 ("[t]he resolution of some line-drawing problems . . . is properly left to the trier of fact") (citing *PPG*, 156 F.3d at 1355).  The opinions of Defendants' expert in this regard are unpersuasive.  (Dkt. No. 76-1, Aug. 1, 2025 Terveen Decl. ¶¶ 28–30 & 32.)

As for the length of the recited "gliding action provided from outside of the touch screen towards inside of the touch screen," Defendants' expert opines as to uncertainty regarding whether the length of the "gliding action" is measured from an edge of the screen or from somewhere outside of the screen.  *Id.* at ¶ 31 (citing '602 Patent at 60:43–49).  The claim language, however, is sufficiently clear that the length is measured from the edge of the screen, and the portion of the specification cited by Defendants' expert likewise discloses:

If the user desired to change the location of (a portion of) said keypad, he may provide a gliding action 311006 departing from the edge 313012 of the screen *(e.g. obviously, the gliding action may begin from out of the screen but the system*

*considers the departing point from the edge of the screen)* towards his desired
location inside the screen.

'602 Patent at 60:43–49 (emphasis added).  At the December 15, 2025 hearing, Defendants urged
that this disclosure is merely an example and is not reflected by the claim language, which recites
a gliding action that starts outside of the touch screen.  This disclosure, however, informs how a
person of ordinary skill in the art would understand the claim language, and Defendants identify
nothing in the claims or the specification stating or implying a capability of measuring a length
that begins outside of the touch screen.  The illustration of arrows starting outside of the touch
screen in Fig. 25A, cited by Defendants at the hearing, is unpersuasive because the arrows can be
readily understood as illustrating origins (and directions) of movement rather than any
measurements of length.

The Court therefore hereby expressly rejects Defendants' indefiniteness arguments.
Defendants present no alternative proposed construction, and no further construction is necessary.

The Court accordingly hereby construes "substantially equal to a length of the gliding
action" to have its **plain meaning**.

**10. "said at least one window comprises more than one window located on one or more edges
of the touch screen" and "said bar comprises more than one bar located on one or more
edges of the touch screen"**

| "said at least one window comprises more than one window located on one or more edges of the touch screen" ('602 Patent, Claim 15) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning. Not Indefinite. | "each of the more than one window located on one or more edges of the touch screen is processed by the processor to cause the same action" |

- 48 -

| "said bar comprises more than one bar located on one or more edges of the touch screen" ('602 Patent, Claim 22) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning. Not Indefinite. | "each of the more than one bar located on one or more edges of the touch screen is processed by the processor to perform the same function" |

(Dkt. No. 96, Ex. A, at 19; Dkt. No. 100, Ex. A, at 4.)

(a)  The Parties' Positions

Plaintiff argues that "Defendants do not allege lexicography or disavowal; and Defendants' construction is clearly not the plain meaning of the claim language." (Dkt. No. 70, at 25.)  Plaintiff argues that "Defendants' construction attempts to read limitations into the claims from specification passages regarding duplicate keyboards, which do not even concern the claims at issue in the '602 patent."  (*Id.* (citations omitted).)

Defendants respond that "Keyless provides a non-construction, accusing Defendants of adding words to the claims without showing any error in Defendants' constructions." (Dkt. No. 72, at 17.)  Defendants argue that their proposal is consistent with the syntax of the claims as well as "the '602 patent's embodiment in Figure 25A having a bar on the left and right edges of the touch screen.  (*Id.*, at 18 (citations omitted).)

At the December 15, 2025 hearing, the parties presented oral arguments.

(b)  Analysis

Claim 15 of the '602 Patent depends from Claim 1, and Claims 1 and 15 recite (emphasis added):

1. A system for capturing an event provided from an edge of a touch screen comprising:
        a device having a touch screen;

- 49 -

> *at least one window located in the touch screen on an edge of the touch screen*, wherein said at least one window functions independently of an interface of an application in use on the touch screen; and
>
> a processor;
>
> wherein a gliding action provided from outside of the touch screen towards inside of the touch screen, said gliding action at first interacting with *said at least one window on the touch screen*, is processed by said processor to cause an action assigned to said window, and wherein *said at least one window* is located on the touch screen before said gliding action begins.

> * * *

> 15. The system of claim 1, wherein *said at least one window comprises more than one window located on one or more edges of the touch screen.*

Defendants assert:

> Dependent claim 15 depends from claim 1, which requires that a particular gliding action "at first *interacting with said at least one window* on the touch screen[] is processed by said processor to *cause an action assigned to said window*." '602 patent, claim 1 (emphases added). The term "said window" refers back to the earlier instance in claim 1 of "at least one window located in the touch screen on an edge of the touch screen." Claim 15 adds that "said at least one window comprises more than one window located on one or more edges of the touch screen." Substituting the "at least one window" language in claim 1 with the additional requirements of claim 15 results in a requirement that a particular gliding action "at first interacting with [the more than one window] on the touch screen[] is processed by said processor to cause an action assigned to [the more than one window]." Because the claim recites "an action" assigned to the more than one window, each of the more than one window in claim 15 is processed by the processor to cause the same action of claim 1. This same analysis also applies to dependent claim 22, which depends from independent claim 19.

(Dkt. No. 72, at 17–18.)

Defendants do not persuasively demonstrate, for the "more than one window" in Claim 15, that interaction with each such window must cause the same "action" recited in Claim 1. The recital of "at least one window" does not compel otherwise. Instead, a fair reading of Claim 1 as a whole is that, if there is more than one window, then a different action could be assigned to each window. Defendants cite disclosure in the specification as referring to multiple "portions" having the same function. '602 Patent at 60:39–59 ("chang[ing] the location of (a portion of)"); *see also*

*id.* at Fig. 25A.  Defendants' citations are unpersuasive because this is a feature of a particular disclosed embodiment that should not be imported into the claim.  *See Comark*, 156 F.3d at 1187.

The same analysis applies to Claim 22 of the '602 Patent, which depends from Claim 19.

The Court therefore hereby expressly rejects Defendants' proposed construction, particularly as to Defendants' proposals of "cause the same action" and "perform the same function," and no further construction is necessary.  *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement.  It is not an obligatory exercise in redundancy."); *see also O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010) ("Unlike *O2 Micro*, where the court failed to resolve the parties' quarrel, the district court rejected Defendants' construction."); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1326 (Fed. Cir. 2012); *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015); *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 977–79 (Fed. Cir. 2021).

The Court therefore hereby construes these disputed terms as set forth in the following chart:

| Term | Construction |
|---|---|
| "said at least one window comprises more than one window located on one or more edges of the touch screen"<br><br>('602 Patent, Claim 15) | **Plain meaning** |

| "said bar comprises more than one bar located on one or more edges of the touch screen" ('602 Patent, Claim 22) | Plain meaning |
| --- | --- |

## VI.  DISPUTED TERMS IN U.S. PATENT NO. 10,976,922

As a threshold matter, Plaintiff argues that "[t]he fact that the examiner, the parties, and their experts applied these terms during prosecution and in the IPR further supports a conclusion that the claims are not indefinite" (Dkt. No. 70, at 30), but an IPR petition cannot assert indefiniteness.  *See* 35 U.S.C. § 311(b); *see also Cuozzo Speed*, 136 S. Ct. at 2141–42; *Samsung*, 948 F.3d at 1355.  Also, the Federal Circuit has found that "indefiniteness of a claim does not always imply inability to conduct a prior-art analysis needed for an inter partes review."  *See Cochlear Bone*, 958 F.3d at 1359–60 (citation omitted).  The IPR proceedings cited by Plaintiff therefore do not significantly affect the Court's analysis.

**11. "wherein upon interacting with the interface of any of said applications, the focus of the system is given to the interacted application"**

| "wherein upon interacting with the interface of any of said applications, the focus of the system is given to the interacted application" ('922 Patent, Claims 2) | |
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning. Not Indefinite. | Indefinite |

(Dkt. No. 96, Ex. A, at 23–24; Dkt. No. 100, Ex. A, at 5.)

  (a)  The Parties' Positions

Plaintiff argues that Defendants cannot meet their burden to show indefiniteness for these terms because Defendants have not submitted any expert opinion in support, and Plaintiff also argues that the context is reasonably clear regarding "allow[ing] seamless multitasking, such as

typing in a chat application (e.g., WhatsApp) in the regular application area when the chat application is in focus and then switching to a photo-editing or video-chat application such that the input is now focused on this second application (e.g., photo-editing or video-chat application)." (Dkt. No. 70, at 26–27 (citations omitted).)

Defendants argue that these are improper mixed method-apparatus claims because "[t]he 'interacting' referred to in this step refers to an action performed by a user," and "[b]y requiring user interaction, the system claim recites a method step."  (Dkt. No. 72, at 27.)

Plaintiff replies that this claim is directed to the system's capability "to change the focus of the system," and "none of the disputed terms require a human 'user' to perform any action." (Dkt. No. 77 at 5 & 10.)

At the December 15, 2025 hearing, the parties presented oral arguments.

(b)  Analysis

Legal principles regarding mixed method-apparatus claims are set forth as to the "sweeping action" and "predefined interaction" terms in the '144 Patent, discussed above.

Claim 2 of the '922 Patent, for example, depends from Claim 1, and Claims 1 and 2 recite (emphasis added):

> 1. A system for using multiple applications on a screen of a device, comprising:
>     an electronic device having a touchscreen;
>     an on-screen keyboard for entering text in a first application running within said device wherein a first zone of said touchscreen is assigned to an interface of said first application and a second zone of said touchscreen is assigned to said keyboard; and
>     wherein based on accomplishment of a condition under the control of said keyboard, the system activates a second application and displays an interface of the second application and a reduced interface corresponding to said keyboard on at least a portion of said second zone, and wherein said interface of said first application, said interface of said second application, and the reduced interface corresponding to said keyboard are simultaneously displayed on said touchscreen.

2. The system of claim 1, *wherein upon interacting with the interface of any of said applications, the focus of the system is given to the interacted application.*

The recital in Claim 2 of "wherein upon interacting," read in the context of the system recited in Claim 1 (from which Claim 2 depends), demonstrates that the "interacting" recited in Claim 2 is functional language that relates to a configured responsive of the system and thus does not set forth a distinct method step.  The *H-W Technology* case cited by Defendants is therefore unpersuasive because it is not "unclear when infringement occurs."  *H-W Tech.*, 758 F.3d at 1335; *see id.* ("receiving from said server a list of merchants matching said search criteria and information regarding each of said merchants in said list; wherein said user completes a transaction with at least one of said merchants listed without the need to generate a voice call; wherein said information received by said user comprises a variety of offers, wherein said user selects one of said variety of offers associated with said one of said merchants listed, wherein said selected offer is transmitted to said one of said merchants listed electronically;").

This claim therefore "merely use[s] permissible functional language to describe the capabilities of the claimed system" such that "it is clear that infringement occurs when one makes, uses, offers to sell, or sells the claimed system." *Mastermine*, 874 F.3d at 1316; *see Microprocessor Enhancement*, 520 F.3d at 1375 ("apparatus claims are not necessarily indefinite for using functional language").

The *Katz* and *Power Integrations* cases cited by Defendants are thus also distinguishable. *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1318 (Fed. Cir. 2011) (as to "interface means for providing automated voice messages . . . to certain of said individual callers, wherein said certain of said individual callers digitally enter data," finding that "Katz's claims . . . create confusion as to when direct infringement occurs because they are directed both to systems and to actions performed by 'individual callers'); *Power Integrations*, 2018 WL 5603631, at *15

- 54 -

("said control signal being provided when no feedback signal is provided at said feedback input and said duty cycle signal is in said high state"; finding that "[a] review of th[e] relevant case law makes clear that the disputed term is indefinite because it recites functional language divorced from any recited structure").

Defendants also argue that the recital that "the focus of the system is given to the interacted application" is an additional indication of action, but the use of the passive voice ("is given")—particularly when read as part of this "wherein" clause reciting how the system is configured to behave "upon interacting with the interface of any of said applications"—is likewise functional language that relates to configuration of the system and does not set forth a method step.

The Court therefore hereby expressly rejects Defendants' indefiniteness arguments. Defendants present no alternative proposed construction, and no further construction is necessary.

The Court accordingly hereby construes "wherein upon interacting with the interface of any of said applications, the focus of the system is given to the interacted application" to have its **plain meaning**.

**12. "a search application activated by interacting with a button of said keyboard"**

| **"a search application activated by interacting with a button of said keyboard"** ('922 Patent, Claim 8) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning. Not Indefinite. | Indefinite |

(Dkt. No. 96, Ex. A, at 27; Dkt. No. 100, Ex. A, at 5.)

<u>(a)  The Parties' Positions</u>

Plaintiff argues that Defendants cannot meet their burden to show indefiniteness for these terms because Defendants have not submitted any expert opinion in support, and Plaintiff also

argues that this term "simply requires activating a search application by interacting with a keyboard button" and that "[t]he specification teaches activating applications and functions by interacting with buttons on a keyboard." (Dkt. No. 70, at 28-29 (citations omitted).)

Defendants respond that this is an improper mixed method-apparatus claim because "the 'interacting' referred to in this step refers to an action performed by a user," and Defendants refer to their arguments as to Claim 2 of the '922 Patent, which is addressed above. (Dkt. No. 72, at 29 (citation omitted).)

Plaintiff replies that "none of the disputed terms require a human 'user' to perform any action." (Dkt. No. 77 at 5.) Plaintiff argues: "This is not claiming a method step performed by a 'user.' Rather, it is specifying the type of 'second application' (i.e., 'search application') referenced in claim 1." (*Id.* at 10.)

At the December 15, 2025 hearing, the parties presented oral arguments.

(b)  Analysis

Legal principles regarding mixed method-apparatus claims are set forth as to the "sweeping action" and "predefined interaction" terms in the '144 Patent, discussed above.

Claim 8 of the '922 Patent depends from Claim 1, which is reproduced above. Claim 8 recites:

> 8. The system of claim 1, wherein said second application is a search application activated by interacting with a button of said keyboard assigned to activating said search application.

This claim presents essentially the same dispute as the term "wherein upon interacting with the interface of any of said applications, the focus of the system is given to the interacted application" in Claim 2 of the '922 Patent, which is addressed above. For the same reasons, this disputed term recites functional configuration rather than a distinct method step, and the Court

hereby expressly rejects Defendants' indefiniteness arguments.  Defendants present no alternative proposed construction, and no further construction is necessary.

The Court accordingly hereby construes "a search application activated by interacting with a button of said keyboard" to have its **plain meaning**.

### 13. "use at least one keyword typed through said keyboard"

| "use at least one keyword typed through said keyboard" ('922 Patent, Claim 9) | |
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning. Not Indefinite. | Indefinite |

(Dkt. No. 96, Ex. A, at 31–32; Dkt. No. 100, Ex. A, at 5.)

(a)  The Parties' Positions

Plaintiff argues that Defendants cannot meet their burden to show indefiniteness for these terms because Defendants have not submitted any expert opinion in support, and Plaintiff also argues that "[t]his phrase covers a simple concept, which is using a keyword typed using a keyboard."  (Dkt. No. 70, at 29-30.)

Defendants respond that this is an improper mixed method-apparatus claim because "[t]he language 'at least one keyword typed through said keyboard' recites a method step," and "[b]ecause the system claim includes the method step of entering a keyword, it is indefinite."  (Dkt. No. 72, at 30.)

Plaintiff replies that "none of the disputed terms require a human 'user' to perform any action."  (Dkt. No. 77, at 5.)  Plaintiff argues that "claim 9 limits the functionality of the 'search application' in claim 8, but plainly does not require any 'user' actions as Defendants contend." (*Id.*, at 10.)

At the December 15, 2025 hearing, the parties presented oral arguments.

(b)  Analysis

Legal principles regarding mixed method-apparatus claims are set forth as to the "sweeping action" and "predefined interaction" terms in the '144 Patent, discussed above.

Claim 9 of the '922 Patent recites:

9. The system of claim 8, wherein said search application use [*sic*] at least one keyword typed through said keyboard.

This claim presents essentially the same dispute as the term "wherein upon interacting with the interface of any of said applications, the focus of the system is given to the interacted application" in Claim 2 of the '922 Patent, which is addressed above.  For the same reasons, this disputed term recites functional configuration rather than a distinct method step, and the Court hereby expressly rejects Defendants' indefiniteness arguments.  Defendants present no alternative proposed construction, and no further construction is necessary.

The Court accordingly hereby construes "use at least one keyword typed through said keyboard" to have its **plain meaning**.

## VII.  CONCLUSION

The Court adopts the constructions set forth in this opinion for the disputed terms of the patent-in-suit.  The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury.  Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury.  Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

**So ORDERED and SIGNED this 12th day of January, 2026.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE